IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EDMUND ZIEGER, on behalf of himself and all others similarly situated, ) ) ) ) Plaintiff, ) ) v. ) ) ADVANCE AMERICA, CASH ADVANCE ) CENTERS, INC. d/b/a ADVANCE AMERICA, ) and NCAS OF DELAWARE, LLC d/b/a ) ADVANCE AMERICA, ) ) Defendants. ) ) | C.A. No. 13-1614-GMS |

## MEMORANDUM

### I. INTRODUCTION

The plaintiff Edmund Zieger ("Zieger) filed this putative class action on September 25, 2013, against defendants NCAS of Delaware, LLC and Advance America, Cash Advance Centers, Inc. (collectively, "Advance"). (D.I. 1.) Zieger alleges that a loan agreement between Advance (lender) and Zieger (borrower), as well as other similar agreements with other borrowers, are unconscionable and unenforceable. Zieger seeks compensatory damages, as well as declaratory and injunctive relief on behalf of himself and the putative class. (*Id.*) Currently before the court are the Defendants' motion to dismiss for failure to state a claim and lack of subject matter jurisdiction (D.I. 7), and motion to strike class allegations in the complaint.[1] (D.I. 9.) For the reasons that follow, the court will grant Advance's motion to dismiss and motion to strike. Zieger will be given leave to amend the complaint with new class allegations in light of the court's ruling.

---

[1] Advance also requested a stay of the deadline to file an answer to Zieger's complaint until the instant motions were resolved. (D.I. 7.) Zieger did not oppose the requested stay. (D.I. 14 at 17–18.)

## II. BACKGROUND[2]

Zieger entered into a loan agreement ("Customer Agreement") with Advance on August 8, 2013. (D.I. 1, ¶ 5.) Zieger borrowed a principal amount of $650.00. (*Id.*; Ex. G.) Pursuant to the terms of the Customer Agreement, Zieger was to submit payments of approximately $249.50 every month for six months, for a total of $1,496.94, in order to repay the loan. (*Id.*) Removing the principal from the calculus, this amounted to $846.94 in interest, or an annual percentage rate ("APR") of 387.16%. (*Id.*) The Customer Agreement disclosed each of these terms. (*Id.*) Zieger also granted Advance ACH authorization to make automatic debit withdrawals from his bank account to meet the monthly payments. (*Id.* ¶ 6.) Loans of this type have been referred to as "payday" loans in the industry. (*Id.*, Ex. A.)

In addition, the Customer Agreement contained provisions governing "Dispute Resolution" (the "Dispute Resolution clause"). (*Id.* Ex. G.) The Dispute Resolution clause mandated that disputes would be resolved via arbitration or small claims court:

> If you have any with us [Advance] or if we have any dispute with you, then both you and we must seek resolution of the dispute in either small claims court or in arbitration. If your dispute cannot be filed in small claims court for any reason, then you must seek resolution of your dispute in arbitration. Regardless of the forum, you may not pursue the resolution of any dispute in a representative, private attorney general, or class action, and you may not be a named or unnamed class member in any such action.

(*Id.*) The Customer Agreement provided an opt-out mechanism, however: "You may opt out of the above dispute resolution agreement by sending a letter to [Advance] within 30 days after signing this agreement." (*Id.*) Zieger successfully opted out of the Dispute Resolution clause by following the outlined procedure. (D.I. 10, Ex. B.)

---

[2] The background is drawn primarily from Zieger's complaint.

On September 25, 2013, after making one of the scheduled monthly payments, Zieger filed this lawsuit with the putative class action complaint. (D.I. 1.) Subsequently, on October 18, 2013, after a second payment had been withdrawn, the parties reached an agreement whereby Advance would not take or accept further payment from Zieger during the pendency of this action.[3] (D.I. 5, ¶ 2.) The complaint alleges that the Customer Agreement Zieger signed and other similar agreements signed by putative class members are unconscionable. The complaint contains five counts: (1) injunctive relief preventing the enforcement of the Customer Agreement ("Count I"), (2) declaratory judgment that the Customer Agreement and those containing similar terms are unconscionable and enforceable ("Count II"), (3) breach of duty of fair dealing ("Count III"), (4) violation of the Delaware Consumer Fraud Act ("Count IV"), and (5) unjust enrichment ("Count V").

## III. STANDARD OF REVIEW

Advance filed a motion to dismiss on the grounds that Zieger lacks standing to assert several of the claims in the complaint and therefore the court lacks subject matter jurisdiction over these matters. (D.I. 7.) Advance also moved to dismiss Counts III, IV, and V for failure to state a claim. (*Id.*) In addition, Advance filed a motion to strike the class allegations of the complaint. (D.I. 9.)

### A. <u>Subject Matter Jurisdiction</u>

Federal Rule of Civil Procedure 12(b)(1) provides that a party may bring a motion to dismiss for lack of subject matter jurisdiction. A motion to dismiss for want of standing is also properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter. *See St.*

---

[3] Thus, to date, Zieger has repaid a total of $499.

3

*Thomas-St. John Hotel & Tourism Ass'n v. Gov't of the V.I.*, 218 F.3d 232, 240 (3d Cir. 2000) ("The issue of standing is jurisdictional."); *Kauffman v. Dreyfus Fund, Inc.*, 434 F.2d 727, 733 (3d Cir. 1970) ("[W]e must not confuse requirements necessary to state a cause of action . . . with the prerequisites of standing.").

Pursuant to Rule 12(b)(1), the court must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the nonmoving party. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 296 (3d Cir. 2003). On a motion to dismiss for lack of standing, the plaintiff "bears the burden of establishing the elements of standing, and each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *FOCUS v. Allegheny Cnty. Ct. Com. Pl.*, 75 F.3d 834, 838 (3d Cir.1996) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)) (internal quotation marks omitted). At the motion to dismiss stage, "general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan*, 504 U.S. at 561; *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007).

### B. Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) provides that a party may bring a motion where the plaintiff has failed "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss, the court follows the Third Circuit's two-part analysis. *Edwards v. A.H. Cornell & Son, Inc.*, 610 F.3d 217, 219 (3d Cir. 2010); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, a court should separate the factual and legal elements of a claim, accepting the facts and disregarding the legal conclusions. *Fowler*, 578 F.3d.

at 210–11. Second, a court should determine whether the remaining well-pled facts sufficiently show that the plaintiff "has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). As part of the analysis, a court must accept all well-pleaded factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002); *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). In this regard, a court may consider the pleadings, public record, orders, exhibits attached to the complaint, and documents incorporated into the complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384–85 n.2 (3d Cir. 1994).

The court's determination is not whether the non-moving party "will ultimately prevail" but whether that party is "entitled to offer evidence to support the claims." *United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 302 (3d Cir. 2011). The court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663–64.

### C. **Strike Class Allegations**

Rule 23 of the Federal Rules of Civil Procedure details the necessary elements for class action certification. Fed. R. Civ. P. 23. Though there is no steadfast rule for when the court should evaluate the class allegations, Rule 23 explains that, "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A). The focus should be on the term "practicable." Thus, in some cases, discovery into the asserted claims may be required before the

court should consider class certification, whereas discovery may not be necessary in others. *Compare Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011) ("[N]othing in the rules says that the court must await a motion by the plaintiffs. . . . The problem for the plaintiffs is that we cannot see how discovery or for that matter more time would have helped them. . . . [T]hey do not explain what type of discovery or what type of factual development would alter the central defect in this class claim."); *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443 (5th Cir. 2007) ("Where it is facially apparent from the pleadings that there is no ascertainable class, a district court may dismiss the class allegation on the pleadings."); *King v. Capital One Bank (USA), N.A.* No. 3:11-cv-00068, 2012 WL 5570624, at *13 (W.D. Va. Nov. 15, 2012) ("Although Plaintiff has not yet moved to certify a class, such motion is not required for a court to decide the certification issue when doing so is practicable and appropriate."), *with Drake v. Hyundai Rotem USA, Corp.*, No. 13-0868, 2013 WL 4551228, at *6 (E.D. Pa. Aug. 28, 2013) ("Courts have good reason to decline to hastily strike class action allegations early in the litigation life cycle. Specifically, unless the parties have completed discovery and at least one party has moved for class certification, a court very rarely has the information necessary to conduct the rigorous analysis inherent in the class certification decision." (internal quotation marks omitted)); *Bell v. Money Resource Corp.*, No. 08-639, 2009 WL 382478, *3 (E.D. Pa. Feb. 13, 2009) ("[T]he Court declines to rule that class certification must be denied without a motion for class certification and the benefit of discovery."). The court should therefore consider the realities of the case before it in determining whether a motion to strike class allegations is premature.

## IV. DISCUSSION

The court first addresses the arguments raised in Advance's motion to dismiss before turning to the motion to strike the class allegations.

### A. **Standing to Challenge the Dispute Resolution Clause**

Advance argues that, to the extent Zieger's Counts I and II challenge the Dispute Resolution clause of the Customer Agreement, Zieger lacks standing because he opted out of this provision. Zieger does not dispute that he opted out, but argues that he can still challenge the provision because arbitration is an affirmative defense. The court agrees with Advance that Zieger lacks standing to challenge the Dispute Resolution clause.

Zieger appears to miss the primary thrust of Advance's argument. Had another class member—one who had not opted out and was still subject to the Dispute Resolution clause— brought this lawsuit, Zieger's affirmative defense argument would be appropriate. But because Zieger did in fact opt out of this clause, he lacks standing to challenge it at all. In other words, Zieger cannot allege any individualized, concrete injury resulting from the Dispute Resolution clause because he is not subject to it. *See Joint Stock Soc'y v. UDV N. Am., Inc.*, 266 F.3d 164, 175 (3d Cir. 2001) (listing "injury in fact" as an essential element of Article III standing (citing *Lujan*, 504 U.S. at 560–61)).

Moreover, Advance cites unambiguous authority that Zieger's standing to challenge the Customer Agreement generally is severable from his standing (or lack thereof) to challenge the Dispute Resolution clause. *See Quilloin v. Tenet HealthSys. Phila., Inc.*, 673 F.3d 221, 229 (3d Cir. 2012) ("[R]egardless of whether a contract as a whole is valid, agreements to arbitrate are severable from a larger contract, and may therefore be separately enforced and their validity

7

separately determined."); *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70–71 (2010) ("[A]s a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract." (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006))). There is no support for the proposition that Zieger, despite not being subject to the Dispute Resolution clause, can challenge the clause on behalf of unnamed putative class members. The court considers the Supreme Court's reasoning in *Blum v. Yaretsky* to be directly on point:

> It is not enough that the conduct of which the plaintiff complains will injure *someone*. The complaining party must also show that he is within the class of persons who will be concretely affected. Nor does a plaintiff who has been subject to injurious conduct of one kind possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject.

457 U.S. 991, 999 (1982). Although similarly situated in some ways with others who may have taken out loans with Advance, Zieger is not concretely affected by the Dispute Resolution clause in particular and therefore lacks standing to challenge it. Indeed, he is bringing this lawsuit in federal court precisely because he is not subject to the Dispute Resolution clause. To the extent they weigh on the enforceability of the Dispute Resolution clause, Counts I and II are dismissed for lack of subject matter jurisdiction. The effect of this holding on Zieger's class allegations is discussed in detail below.

### B. Failure to State a Claim

#### 1. Count III

Zieger's Count III alleges that the Customer Agreement breached the duty of fair dealing. This implied covenant—typically referred to as the "implied covenant of good faith and fair dealing"—originates at common law. *Merrill v. Crothall-Am., Inc.*, 606 A.2d 96, 101 (Del. 1992)

8

("At common law the duty of fair dealing and good faith was deemed impliedly to be a part of contracts of every kind." (citing Restatement (Second) Contracts § 204 (1979))). Advance argues that Zieger fails to state a claim for breach of the implied covenant of good faith and fair dealing because he does not allege a breach of any specific implied duty, and the conduct at issue was expressly authorized by the Customer Agreement. In response, Zieger asserts that the allegedly unconscionable terms of the Customer Agreement and the manner in which it was marketed amount to a breach of the implied covenant.

Zieger again appears to misunderstand and misstate the applicable law. The implied duty of fair dealing is "not a free-floating duty unattached to the underlying legal documents." *Gerber v. Enter. Prods. Holdings, LLC*, 67 A.3d 400, 418–19 (Del. 2013), *overruled on other grounds*, *Winshall v. Viacom Int'l, Inc.*, 76 A.3d 808 (Del. 2013). Rather, it is "a commitment to deal 'fairly' . . . *with the terms of the parties' agreement and its purpose.*" *Id.* at 419 (emphasis added). In this sense, the implied covenant exists to fill "contractual gaps" and "handle developments" that neither party anticipated at the time of contract formation. *Id.* at 421 (citing *Nemec v. Shrader*, 991 A.2d 1120, 1125 (Del. 2010)). "General allegations of bad faith conduct are not sufficient. . . . [T]he plaintiff must allege a specific implied contractual obligation and allege how the violation of that obligation denied the plaintiff the fruits of the contract." *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 888 (Del. Ch. 2009).

Zieger's allegations do nothing more than allege generally that the terms of the Customer Agreement were unfair: "The crux of Plaintiff's claim for breach of the implied covenant is that Defendants invoke and exploit unconscionable terms and conditions . . . ." (D.I. 14 at 13.) Thus, Zieger takes issue with the express terms of the Customer Agreement and not any implied

9

obligation owed by Advance. *See Gerber*, 67 A.3d at 419 ("Express contractual provisions always supersede the implied covenant . . . ."). A decision from within this district confronted a case with nearly identical factual underpinnings. *Patrick v. E. Specialty Fin., Inc.*, No. 13-2074-SLR, 2014 WL 3723017 (D. Del. July 22, 2014). The court is convinced that the reasoning offered there applies forcefully in the case at bar:

> Plaintiff . . . simply alleges that defendant is "engaged in unconscionable acts" and that defendant's business model "is to prey on poor and unsophisticated borrowers" causing them to become entrapped in ongoing cycles of debt. Plaintiff has provided the court with independent and government agencies' evaluations of the overall "payday" loan industry. However, plaintiff's claim here fails because plaintiff does not identify a specific implied contractual obligation. This dispute falls outside the narrow purpose of the implied duty of fair dealing that prohibits arbitrary or unreasonable conduct frustrating the fruits of the bargain.

*Id.* at *2 (internal citations omitted). The implied covenant of good faith does not exist to protect against contracts that adhere to their terms as contemplated. Zieger fails to state a claim upon which relief can be granted. Count III is dismissed.

### 2. Count IV

Zieger's Count IV alleges that the Customer Agreement violated the Delaware Consumer Fraud Act ("DCFA"). The DFCA states:

> [A]ny deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise . . . is an unlawful practice.

6 Del. C. § 2513. Moreover, as a fraud claim, an alleged violation of the DFCA must be pled with particularity. Fed. R. Civ. P. 9(b) ("In alleging fraud . . . , a party must state with particularity the circumstances constituting fraud . . . .").

10

In his complaint, Zieger states generally that Advance's conduct violates the DFCA, restating the definition outlined in § 2513. (D.I. 1, ¶ 63.) Zieger provides criticisms of the practice of payday loans, alleging that Advance preys on those it knows will be unable to repay in the period provided. (*Id.* ¶¶ 20–23.) Zieger also alleges that Advance improperly downplayed the import of the APR by saying it "doesn't matter" and is "massively misleading." (*Id.* ¶¶ 4, 14, 20, Ex. A.)

Zieger has not identified a misrepresentation or omission as required by the DCFA, let alone has he done so with particularity, as required by Rule 9(b) of the Federal Rules of Civil Procedure. Zieger's attacks on the practice of payday loans wholesale are insufficient to constitute allegations of fraud as recognized by the DCFA. Moreover, the statements that APR "doesn't matter" and is "massively misleading" are statements taken from a third-party website. (D.I. 1, Ex. A.) It is unsurprising that Advance would try and market its loans with favorable literature from other sources; these statements do not amount to fraud when the terms of the loan are laid out expressly in the Customer Agreement.[4] The APR identified in the Customer Agreement (387.16%) is accurate. Whether the borrower views this as a helpful figure is of limited importance—it is simply a mathematical representation of the loan terms. Even if Zieger could argue this characterization was misrepresented, the court does not consider the conceptual treatment of the APR to be a "material fact," as required by the DFCA. 6 Del. C. § 2513. If anything, Advance appeared to offer a warning to Zieger that payday loans taken over a period of months "can be expensive." (D.I. 1, ¶ 21.) The court does not comment on the overall validity of

---

[4] As Advance points out, the statements taken from the third-party website concern loans with repayment schedules of "a matter of days," as opposed to the loan taken by Zieger for six months. (D.I. 15 at 7 n.3.) Thus, the APR characterizations were not even directly related to Zieger's specific loan.

11

the Customer Agreement, but there have been no allegations to support a theory of fraud. Aside from attacking Advance's business model and practices generally, Zieger has not alleged any specific misrepresentation of omission and therefore has failed to state a claim under the DCFA. *See Patrick*, 2014 WL 3723017, at *3. Count IV is dismissed.

### 3. Count V

Zieger alleges that the profits accrued by Advance from payday loans constitute unjust enrichment. Unjust enrichment is an equitable cause of action: "the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience." *Nemec v. Shrader*, 991 A.2d 1120, 1130–31 (Del. 2010). Advance argues that Zieger fails to state a claim as to himself and therefore also lacks standing to assert unjust enrichment on behalf of unnamed class members.

The court agrees with Advance. To date, Zieger has made two of his scheduled payments, for a total of $499. The principal loan was for $650. Moreover, pursuant to the parties' October 18, 2013, stipulation, Advance will not take any further funds until the enforceability of the Customer Agreement is resolved. Thus, there is no situation in which Advance will be unjustly enriched at the expense or "impoverishment" of Zieger. *See id.* at 1130 (identifying "enrichment" and "impoverishment" as elements of an unjust enrichment claim). Either the Customer Agreement will be upheld and Zieger will pay the additional scheduled payments, or it will be invalidated and an equitable repayment scheme will likely be imposed. Zieger cannot state a claim for unjust enrichment solely on the basis of repaying $499 of a $650 loan.

As a consequence of Zieger's failure to state an individualized claim, he lacks standing to pursue an unjust enrichment claim on behalf of the class. As already stated, "[i]t is not enough

12

that the conduct of which the plaintiff complains will injure *someone*. The complaining party must also show that he is within the class of persons who will be concretely affected." *Blum*, 457 U.S. at 999. Therefore, even if there are those within the putative class who may have a viable unjust enrichment claim, Zieger cannot assert the claim on their behalf. Claim V is dismissed as to Zieger and the class.

### C. Strike Class Allegations

Advance also filed a motion seeking to strike the class allegations. Rule 23(a) of the Federal Rules of Civil Procedure states:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These requirements are referred to as the (1) numerosity, (2) commonality, (3) typicality, and (4) adequate representation requirements. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011).

Zieger's putative class contains "all of those persons who entered into loans with Advance that contain unconscionable terms as described in the complaint . . . ." Advance asserts that the class allegations must fail because it is impossible for Zieger to satisfy the Rule 23 class certification requirements. In particular, Advance argues that Zieger is in "class of one" and therefore cannot meet the numerosity requirement.

13

The class, as currently defined by Zieger, cannot survive, even with discovery. *See Pilgrim*, 660 F.3d at 949. As explained already, Zieger lacks standing to challenge the Dispute Resolution clause. Moreover, arbitration clauses are presumed to be enforceable. 9 U.S.C. § 2; *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011) (describing the "liberal federal policy favoring arbitration" and explaining that arbitration agreements are generally to be "enforce[d] . . . according to their terms"). The combination of these two truths bars those who failed to opt out of the Dispute Resolution clause from participating in Zieger's putative class: the Dispute Resolution clause—which Zieger cannot challenge and which is presumed valid—expressly prevents borrowers from participating in class actions. (D.I. 1, Ex. G.)

Zieger may be able to formulate a class of only those who also opted out of the Dispute Resolution clause. Advance attaches evidence that Zieger is the only person who opted out of a Customer Agreement offered by NCAS of Delaware, LLC (the specific defendant who contracted with Zieger). (D.I. 11, ¶ 11.) At this early stage, however, the court cannot rule definitively that Zieger is truly a class of one. Therefore, the court will grant Advance's motion to strike but will also offer Zieger leave to amend his complaint if he has a good faith belief that there is a viable class of similarly situated borrowers who also opted out of the Dispute Resolution clause.

## V. CONCLUSION

For these reasons, Advance's motion to dismiss is granted. Counts III, IV, and V are dismissed in their entirety. Counts I and II are also dismissed, but only to the extent they touch on the Dispute Resolution clause. Advance's motion to strike the class allegations is also granted. Zieger is granted leave to amend the complaint with class allegations pertaining to those similarly situated borrowers who may have also opted out of the Dispute Resolution clause. Because

14

Advance's answer to the complaint is still forthcoming as well, the parties shall coordinate a schedule for the submission of any additional pleadings.

Dated: December 29, 2014

_____
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | )|
|---|---|
|EDMUND ZIEGER, on behalf of himself and | )|
|all others similarly situated, | )|
| | )|
| Plaintiff, | )|
| | )|
| v. | ) C.A. No. 13-1614-GMS|
| | )|
|ADVANCE AMERICA, CASH ADVANCE | )|
|CENTERS, INC. d/b/a ADVANCE AMERICA, | )|
|and NCAS OF DELAWARE, LLC d/b/a | )|
|ADVANCE AMERICA, | )|
| | )|
| Defendants. | )|

## ORDER

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED THAT:

1. The defendants' Motion to Dismiss for Failure to State a Claim and for Lack of Subject Matter Jurisdiction (D.I. 7) is GRANTED;

2. Counts I and II are dismissed to the extent they concern the Dispute Resolution clause, and Counts III, IV, and V dismissed in their entirety;

3. The defendants' Motion to Strike Class Allegations (D.I. 9) is GRANTED;

4. The defendants' Motion to Stay Deadline for Answer (D.I. 7) is GRANTED;

5. Zieger will be granted leave to amend his complaint with new class allegations;

6. The parties shall coordinate an agreed schedule for filing of further pleadings.

Dated: December 29, 2014

UNITED STATES DISTRICT JUDGE